UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                 :
**ANGEL COLON**,
                 :
                             Petitioner,
                 :     **MEMORANDUM DECISION AND**
                       – against –                     **ORDER**
                 :
                                                                           20-CV-5252 (AMD)
**WARDEN HERIBERTO H. TELLEZ**,
                 :
                             Respondent.
                 :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

        The *pro se* petitioner, who was released from the Metropolitan Detention Center in Brooklyn ("MDC") and is currently on supervised release, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  (ECF No. 1.)  The petitioner challenges the issuance of an incident report and the related disciplinary hearing, and seeks reinstatement of 27 days of good-time credits and residential drug treatment good-time credits.  For the reasons explained below, his petition is denied.

**BACKGROUND**

        In June 2019, the MDC referred the petitioner to a residential reentry program, and placed him in the Bronx Community Reentry Center ("Bronx CRC").  (ECF No. 10 at 9.)  As part of that program, the petitioner worked at a Johnstons Subaru car dealership in Middletown, New York.  (*Id.* at 10.)  On January 16, 2020, at 1:24 p.m., the general sales manager of the dealership called Magaly Cosme—the Acting Facility Director of the Bronx CRC—and told her that the petitioner "assaulted another co-worker after he was given a directive."  (ECF No. 11-1

---

[1] According to the Federal Bureau of Prisons Inmate Locator, the petitioner was released on March 30, 2021.  Inmate Locator, BOP, https://www.bop.gov/inmateloc.

at 1.) The petitioner "ran into his vehicle and [drove] off" after he learned that the manager was calling the police. (*Id.*) State police arrested the petitioner at 1:53 p.m.; an investigator informed the Bronx CRC of his arrest. (*Id.*) Ms. Cosme then notified the Residential Reentry Manager, who placed the petitioner on escape status. (*Id.*)

Ms. Cosme completed the incident report on January 22, 2020, charging the petitioner with "[v]iolating a condition of a community program." (*Id.*) After the petitioner received the incident report on January 28, 2020, at 10:37 a.m. (*id.*), he signed a "Waiver of 24 Hour Notice," waiving his right to have a written copy of the charges at least 24 hours prior to the Center Discipline Committee ("CDC") hearing. (ECF No. 11-3.) That same day, a case manager investigating the incident spoke with the petitioner, and advised him of his right to remain silent. (ECF No. 11-4 at 1.) The petitioner stated that "he had an incident at his job so he left his job to avoid any confrontation with the individual. Once he got to his [residence] he received a contact call from Ms. Cosme to ask him if he was home and then he was informed to pick contact call from the facility which he did. Then State Troopers came to pick him up and informed them that he had to go and pick a summons ticket." (*Id.*) The petitioner received and signed a "Notice of Center Discipline Committee Hearing," by which he waived his right to have a staff representative, and to call witnesses at the hearing. (*See* ECF No. 11-5.) He also signed a form titled "Inmate Rights at Center Discipline Committee Hearing" notifying him of his rights, including his "right to be present throughout the Center Discipline Committee hearing except during Committee deliberations and except where Center safety would be jeopardized." (ECF No. 11-6.)

On January 28, 2020, at 11:22 a.m., the CDC held the hearing. (ECF No. 11-7 at 1.) The petitioner waived his right to a staff representative, denied the charge and did not make further

2

statements or call any witnesses. (*Id.*) The CDC found that the "act was committed as charged," and "recommend[ed] the inmate to be returned to secure custody." (*Id.* at 2.) On January 31, 2020, the Disciplinary Hearing Officer ("DHO") certified that "[t]he findings of the CDC [were] supported by a substantial factual basis," and that "[t]he sanction recommended by the CDC [was] proportionate to the offense committed." (ECF No. 11-8.) The DHO added another sanction—disqualification of 27 days of good-time credits. (ECF No. 11-9 at 2.)

On February 6, 2020, Ms. Cosme wrote a letter to DHO Nichole Hayden, in which she stated:

> On January 16, 2020, at 3:00 pm, [the petitioner] was placed on escape status due to an arrest by local police for Assault. On January 22, 2020, the RRC received notification that the AUSA SDNY would not prosecute [the petitioner] for escape. Therefore, the CDC process was held beyond the 24 hours/5 calendar day time frame.

(ECF No. 11-2.) The Residential Reentry Manager authorized the United States Marshals Service to remand the petitioner to the MDC on February 17, 2020.[2] (ECF No. 11-10.)

On April 9, 2020, the petitioner administratively appealed to the Northeast Regional Office; that office did not respond. (ECF No. 1 at 2.) On September 9, 2020, the petitioner submitted an appeal to the Central Office, which was rejected because he did not submit the correct number of copies. (*Id.* at 3, 21.) The petitioner resubmitted the appeal on November 3, 2020. (ECF No. 9 at 3.) On January 14, 2021, the Central Office denied the petitioner's appeal, finding that his "Due Process rights were upheld during the discipline process." (*Id.* at 6.) The Central Office also informed the petitioner that Bronx CRC staff had amended the CDC report to

---

[2] The memorandum is misdated February 17, 2021.

"correct[ ] . . . typographical errors;" they changed the incident on the amended report to "escape."[3] (*Id.* at 6-7.)

The petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on November 9, 2020. (ECF No. 1.) He claims that the untimely delivery of the incident report, the hearing—at which he was allegedly not present—and the failure to vacate the incident report violated his constitutional rights.[4] (*Id.* at 6-8.) The petitioner also argues that the amendment to the incident report after the disciplinary process violated his due process rights. (ECF No. 9 at 1.) In his reply, he contends that Ms. Cosme should have recused herself from the CDC hearing, and that he was entitled to a DHO hearing. (ECF No. 12 at 1-2.) He seeks an order vacating the incident report, reinstating his 27 days of good-time credits and residential drug treatment good-time credits and authorizing his immediate release from custody. (ECF No. 1 at 8.)[5]

## LEGAL STANDARD

Federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States" may seek habeas corpus review pursuant to 28 U.S.C. § 2241. *Id.* § 2241(c)(3). Specifically, "[a] writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997)). The execution of a sentence includes "matters such as 'the administration of parole, computation of a prisoner's sentence by

---

[3] Another version of the CDC report from March 3, 2020, describes the incident as "[e]scape from non-secure facility within a 4 hour return." (ECF No. 1 at 19.)

[4] On February 25, 2021, the petitioner filed a motion for summary judgment, which I construed as a motion for default judgment. (ECF No. 9.) Because the respondent was granted an extension of time and filed a timely response, I denied the petitioner's motion as moot. (March 2, 2021 Order.)

[5] The respondent submitted a sur-reply, at the Court's request, to address the arguments the petitioner raised for the first time in his reply. (ECF Nos. 13, 14.)

4

prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)); *see also Carmona*, 243 F.3d at 632 (finding that habeas corpus petition to expunge disciplinary sanctions, including loss of good-time credits, was properly brought under § 2241).

## DISCUSSION[6]

### I.   Sixth and Eighth Amendment Claims

The petitioner maintains that the incident report violated his "Sixth Amendment Rights to Just and Fair Procedure," that the hearing violated his "Sixth Amendment [Rights to] a Fair Hearing," and that both violated his "Eighth Amendment Due Process" rights. (ECF No. 1 at 6-7.) He also asserts that the regional office's failure to vacate the incident report violated his Fifth, Sixth and Eighth Amendment rights. (*Id.* at 8.)

The Sixth Amendment, by its terms, "applies only to criminal proceedings." *Lopez v. City of New York*, No. 05-CV-3624, 2007 WL 2228150, at *10 (E.D.N.Y. July 31, 2007); *see Warden v. Pataki*, 35 F. Supp. 2d 354, 365 (S.D.N.Y.) ("The Sixth Amendment right to counsel

---

[6] The respondent argues that upon the petitioner's release from custody, the petition became moot. (*See* ECF No. 10 at 7; ECF No. 13.) "The mootness doctrine prohibits federal courts from issuing judicial decisions in a case . . . if developments after the filing of the litigation render a federal court unable to grant any effectual relief to the prevailing party." *Nieves v. LaClair*, No. 14-CV-108, 2021 WL 2313184, at *7 (E.D.N.Y. June 7, 2021); *see also Martin–Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). However, in this circuit, a court may provide "effectual relief" even after a petitioner's imprisonment term has ended by reducing his term of supervised release. *See Whalen v. Fed. Bureau of Prisons*, No. 09-CV-1572, 2011 WL 2669112, at *2 (E.D.N.Y. June 30, 2011) (recognizing that "28 U.S.C. § 2243 authorizes the district court to provide habeas relief as law and justice require, including a reduction in a petitioner's term of supervised release"); *Jefferies v. Billingsly*, No. 11-CV-4198, 2012 WL 34669, at *2 (S.D.N.Y. Jan. 9, 2012) (finding that the petition was not moot because the petitioner could receive effectual relief, such as a reduction in the term of supervised release or expungement of an incident report), *report and recommendation adopted sub nom. Jefferies v. Billingsley*, No. 11-CV-4198, 2012 WL 573718 (S.D.N.Y. Feb. 22, 2012). Accordingly, the petition is not moot.

. . . applies only to 'criminal prosecutions.'"), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999); *Watts v. Pataki*, No. 08-CV-92, 2009 WL 1765016, at *3 (N.D.N.Y. June 22, 2009) ("[T]he Sixth Amendment applies to criminal prosecutions, and a parole hearing is not part of a criminal prosecution."). The Second Circuit has held that "prison disciplinary hearings are not treated as 'criminal' for purposes of the Sixth Amendment." *Sash v. Zenk*, 439 F.3d 61, 63 (2d Cir. 2006). Accordingly, the petitioner's Sixth Amendment claims are denied.

The Eighth Amendment "protects prisoners from cruel and unusual punishment by prison officials," *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015), whereas the Fifth and Fourteenth Amendments "prohibit the government from depriving any person of life, liberty, or property, without due process of law." *Smalls v. Collins*, No. 20-1099-CV, 2021 WL 3700194 (2d Cir. Aug. 20, 2021) (internal quotation marks, citations and alterations omitted). Inmates bring Eighth Amendment claims typically to challenge the "denial of adequate medical care," "unconstitutional conditions of confinement unrelated to medical care" and the "failure to protect." *Randle v. Alexander*, 960 F. Supp. 2d 457, 470 (S.D.N.Y. 2013). Though the petitioner cites the Eighth Amendment, he does not raise issues that are customarily resolved by Eighth Amendment claims; instead, he challenges the lack of "due process of law." (ECF No. 1 at 7-8.) Accordingly, the petitioner's Eighth Amendment claims "relating to disciplinary proceedings . . . are more properly analyzed as due process violations." *Barclay v. New York*, 477 F. Supp. 2d 546, 555 (N.D.N.Y. 2007).

## II.     Due Process Claims

The petitioner maintains that he received the incident report late, and that he was not present at his hearing. Therefore, he claims, his good-time credits were "disallowed without due process to contest the incident report." (ECF No. 1 at 6-7.) He also contends that the regional office should have vacated the incident report "because it was [an] illegal[] sanction." (*Id.* at 8.)

6

He also argues that the amendment to the incident report—changing the incident to "escape"—violated his due process rights. (ECF No. 9 at 1.) Further, the petitioner claims that Ms. Cosme, who wrote the incident report, should have recused herself from the CDC hearing, and that the DHO should have held an additional hearing. (ECF No. 12 at 1-2.)

Because "[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Only "[c]ertain due process protections . . . apply where disciplinary proceedings may lead to the loss of good time credit," including "advance written notice of the charges," "a fair and impartial hearing officer," "a reasonable opportunity to call witnesses and present documentary evidence" and "a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (internal citations omitted). "[I]n the context of such disciplinary proceedings, 'the *only* process due an inmate is that minimal process guaranteed by the Constitution,'" as described above. *Rodriguez v. Lindsay*, 498 F. App'x 70, 71 (2d Cir. 2012) (quoting *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004)). In reviewing a decision to disqualify an inmate's good-time credits, a court considers whether the prison disciplinary board's "findings . . . [were] supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *see Williams v. Menifee*, 331 F. App'x 59, 60-61 (2d Cir. 2009).

The petitioner's claim about the late delivery of the incident report—12 days after the incident in violation of 28 C.F.R. § 541.5—does not raise due process concerns; he has not shown that he "suffered [any] prejudice [caused] by the delay."[7] *See Berkun v. Terrell*, No. 11-CV-3237, 2011 WL 4753459, at *3 (E.D.N.Y. Oct. 7, 2011) ("[The petitioner] provides no

---

[7] 28 C.F.R. § 541.5(a) provides that an inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of [his] involvement in the incident."

7

authority, and the Court has found none, that stands for the proposition that BOP failure to meet regulatory deadlines, without more, renders a prison disciplinary proceeding inconsistent with due process."); *Agosto v. Hufford*, No. 13-CV-4082, 2014 WL 2217908, at *3 (S.D.N.Y. May 8, 2014) ("[T]o the extent internal prison regulations grant protections beyond the constitutional minimum, noncompliance with those regulations do not typically offend due process."), *report and recommendation adopted*, No. 13-CV-4082, 2014 WL 2217925 (S.D.N.Y. May 29, 2014). Moreover, though due process requires "that a prisoner receive 24 hours advance notice of a prisoner disciplinary hearing," *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 511 (S.D.N.Y. 2012) (citing *Sira v. Morton*, 380 F.3d 57, 70 (2d Cir. 2004)), the petitioner waived that right by signing the "Waiver of 24 Hour Notice" form. (*See* ECF No. 11-3); *Simmons v. Hobart*, No. 05-C-510-C, 2006 WL 240290, at *3 (W.D. Wis. Jan. 30, 2006) ("The uncontroverted facts indicate that petitioner did not receive 24 hours advance notice; however, they indicate also that petitioner was informed of this right and waived it."); *see also Cox v. Malone*, 199 F. Supp. 2d 135, 144 (S.D.N.Y. 2002) ("[O]missions or failures that would otherwise constitute due process violations can be waived by the inmate during the course of the disciplinary hearing."), *aff'd*, 56 F. App'x 43 (2d Cir. 2003).

The record also shows that the petitioner attended the CDC hearing, and waived his rights to call witnesses and present documentary evidence by signing the "Notice of Center Discipline Committee Hearing" form, and because he did not present witnesses or evidence at the hearing, or request to do so. (*See* ECF Nos. 11-5, 11-7); *Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir. 1996) ("Federal and state courts in this circuit have recognized that an inmate's silence can constitute a waiver of his due process right to request witness testimony at a disciplinary hearing."); *Pilgrim v. Luther*, No. 01-CV-8995, 2007 WL 233203, at *6 (S.D.N.Y. Jan. 24, 2007)

8

("[The petitioner] did not request that witnesses be summoned . . . [and therefore] waived any right to call his witnesses."), *aff'd*, 571 F.3d 201 (2d Cir. 2009); *Jefferies*, 2012 WL 34669, at *3 (finding that the petitioner failed to show that his due process rights were violated in part because, at the hearing, "he stated he understood his rights and had no documentary evidence or witnesses to present").

In his reply, the petitioner appears to concede he attended the CDC hearing, but maintains that Ms. Cosme "was supposed to recuse herself to allow an impartial hearing" because she wrote the incident report. (ECF No. 10 at 1.) While "due process requires a prison disciplinary hearing to be impartial," *Farid v. Ellen*, No. 01-CV-8292, 2006 WL 59517, at *7 (S.D.N.Y. Jan. 11, 2006), *aff'd*, 593 F.3d 233 (2d Cir. 2010), "the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally." *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989); *see Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) ("It is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." (citations omitted)). Hence, "[p]rison officials enjoy a rebuttable presumption that they are unbiased." *Williams v. Chuttey*, No. 15-CV-1278, 2017 WL 9673722, at *10 (N.D.N.Y. Sept. 5, 2017) (internal quotation marks and citations omitted), *report and recommendation adopted*, No. 15-CV-1278, 2018 WL 1413049 (N.D.N.Y. Mar. 21, 2018), *aff'd*, 767 F. App'x 105 (2d Cir. 2019).

The petitioner does not cite to any evidence in the record to support his allegation that Ms. Cosme participated in his CDC hearing. In fact, the record shows that Ms. Cosme did not sit on the committee presiding over the hearing. "J. Ortiz" signed the CDC report as the "Chairperson" and sole member of the committee; Ms. Cosme's signature does not appear on the report. (*See* ECF No. 11-7 at 2.) J. Ortiz was not involved in the incident or the investigation,

9

and the petitioner does not allege that J. Ortiz was conflicted or biased. Accordingly, there is no evidence that the petitioner did not receive a fair and impartial hearing.[8]

The petitioner also faults the Bronx CRC staff for changing the charge on the incident report from "[v]iolating a condition of a community program" to "escape" and "[e]scape from non-secure facility within a 4 hour return," after the disciplinary proceeding concluded. (ECF No. 9 at 7; ECF No. 1 at 19.) According to the Central Office, the staff members amended the report to "correct[] . . . typographical errors." (ECF No. 9 at 6.) The purpose of the advanced written notice requirement is "to compel 'the charging officer to be [sufficiently] specific as to the misconduct with which the inmate is charged' to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges set out in a misbehavior report." *Taylor v. Rodriguez*, 238 F.3d 188, 192-93 (2d Cir. 2001) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 940 n.11 (2d Cir. 1977)); *see Johnson v. Goord*, 487 F. Supp. 2d 377, 380 (S.D.N.Y. 2007) ("[T]he due process analysis concerning notice properly focuses on whether the inmate was adequately apprised of the charges against him so as to be able to prepare a defense."), *aff'd*, 305 F. App'x 815 (2d Cir. 2009).

The incident report contained specific allegations underlying the charge. According to the report, on January 16, 2020, the petitioner "assaulted another co-worker after he was given a directive," "ran into his vehicle and [drove] off" after he was told the police would be called, and was later arrested in Middletown. (ECF No. 11-1 at 1.) The report "include[d] information

---

[8] The petitioner argues that he should have been "afforded an impartial hearing in front of the DHO Officer Hayden;" he claims that he would have "presented evidence to contest the outdated [incident] report" at a DHO hearing. (ECF No. 12 at 1-2.) However, the petitioner "was not entitled to a DHO hearing because the [CDC] did not request one." *Mansa v. United States*, No. 16-CV-644, 2019 WL 121681, at *13 n.4 (D. Conn. Jan. 7, 2019). In any event, the petitioner does not explain what evidence he would have presented, and why he did not present such evidence to the CDC.

10

about the date, place, and manner of the alleged misconduct," and provided sufficient notice for the petitioner to prepare a defense. *Delgado v. Bezio*, No. 09-CV-6899, 2011 WL 1842294, at *5 (S.D.N.Y. May 9, 2011) (quotation marks and citation omitted); *see Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (holding that the "discrepancy as to the precise nature of the threatened harm" in the written notice of the charges "did not represent a failure of specificity that would impair [the plaintiff's] ability to prepare his defense"); *King v. Ebbert*, No. 15-CV-1937, 2016 WL 7330586, at *2 (M.D. Pa. Dec. 16, 2016) (finding no due process violation even though "the DHO [found] an inmate guilty of an act that [he] was not originally charged with," where the "DHO relied on facts that were contained in the incident report," and "the factual nature of the alleged prohibited conduct did not change" (citations omitted)). Indeed, the petitioner clearly understood to which incident the report referred—during the investigation, he admitted that "he had an incident at his job so he left his job to avoid any confrontation with the individual." (ECF No. 11-4 at 1.)

Moreover, the petitioner has not shown that he was prejudiced by the amendment to the incident report. "To prevail on a procedural due process challenge to a prison disciplinary proceeding, the petitioner must show there was prejudice to [his] case as a result of the alleged violation." *Fulton v. Baltazar*, No. 16-CV-6085, 2018 WL 389097, at *6 (S.D.N.Y. Jan. 11, 2018) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)); *see Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) (dismissing state prisoner's due process claim based on hearing officer's denial of plaintiff's requests to review certain medical records, and to call a sergeant as a witness, where the plaintiff failed to demonstrate that he was prejudiced by those refusals). The petitioner does not explain how the outcome of his disciplinary hearing would

11

have been affected, or what he would have done differently, had he been charged with escape from the outset. Accordingly, the petitioner's due process claims are dismissed.[9]

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       February 22, 2022

---

[9] Because the petitioner's constitutional rights were not violated during the disciplinary process, the Central Office correctly denied his appeal.